IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR SHARRIEFF GAY,<br><br>　　　　Petitioner,<br><br>　v.<br><br>M. EVANS, Warden, and J. WOODFORD, Director,<br><br>　　　　Respondents.　　　　　　　／ | No. C 06-1960 WHA (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. § 2254. The petition is directed to a denial of parole.

The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set forth below, the petition is **DENIED**.

### DISCUSSION

**A.　STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres*

*v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**B.   ISSUES PRESENTED**

The petition is directed to the Board of Prison Terms' June 22, 2004. decision denying petitioner a parole date.  As grounds for habeas relief, petitioner contends that: (1) his due process and double jeopardy rights were violated when the Board used his conduct in prison as a basis to deny him parole; (2) his due process and free speech rights were violated when the Board would not allow him to question them; (3) there was not sufficient evidence to support the Board's finding that his offense was "egregious" and "cruel;" and (4) his equal protection and due process rights were violated by the Board's failure to follow statutes and regulations setting the term he should serve.

Among other things, respondent contends that California prisoner have no liberty interest in parole and that if they do, the only due process protections available are a right to be heard and a right to be informed of the basis for the denial – that is, respondent contends there is no due process right to have the result supported by sufficient evidence.  Because these contentions go to whether petitioner has any due process rights at all in connection with parole, and if he does, what those rights are, they will addressed first.

**1.   RESPONDENT'S CONTENTIONS**

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law."  U.S. Const., amend. XIV, § 1.

**a.   LIBERTY INTEREST**

Respondent contends that California prisoners have no liberty interest in parole. Respondent is incorrect that *Sandin v. Conner*, 515 U.S. 472 (1995), applies to parole decisions, *see Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003) (*Sandin* "does not affect the creation of liberty interests in parole under *Greenholtz* and *Allen*."), and, applying the correct analysis, the California parole statute does create a liberty interest protected by due process, *see McQuillion*

3

*v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) ("California's parole scheme gives rise to a cognizable liberty interest in release on parole."). Respondent's claim to the contrary is without merit.

### b. DUE-PROCESS PROTECTIONS

Respondent contends that even if California prisoners do have a liberty interest in parole, the due process protections to which they are entitled by clearly-established Supreme Court authority are limited to notice, an opportunity to be heard, and a statement of reasons for denial. That is, he contends there is no due process right to have the decision supported by "some evidence." This position, however, has been rejected by the Ninth Circuit, which has held that the Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process if the board's decision is not supported by "some evidence in the record", or is "otherwise arbitrary." *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v. Hill*, 472 U.S. 445-455 (1985)); *McQuillion*, 306 F.3d at 904 (same). The evidence underlying the Board's decision must also have "some indicia of reliability." *McQuillion*, 306 F.3d at 904; *Biggs*, 334 F.3d at 915. The some evidence standard identified in *Hill* is clearly established federal law in the parole context for purposes of § 2254(d). *See Sass*, 461 F.3d at 1128-1129.

### 2. PETITIONER'S CLAIMS

#### a. Evidence Relied Upon

Petitioner contends that his due process and double jeopardy rights were violated when the Board used his conduct in prison as grounds for denying him parole. He argues that the Board should have considered only the nature of his offense in deciding whether he was suitable for parole, in contrast to the frequent argument seen in parole cases which is that the commitment offense itself is not sufficient to support denial of parole.

Section 3041(a) of the California Penal Code provides that a parole date should normally be set at the Board's first meeting with the prisoner. Section 3041(b), however, allows the Board to decline to give a parole date in the interests of public safety. Purely as a question of California law, the California Supreme Court has held that section 3041(b) trumps

4

section 3041(a) – that is, the Board is supposed to "normally" grant parole only if it first determines that the inmate is not a threat to the safety of the public. *In re Rosenkrantz*, 29 Cal.4th 616, 654 (2002).

Petitioner contends that the Board's consideration of evidence other than the nature of his crime was a violation of due process because the statute the Board was applying, section 3041(b) of the California Penal Code, allows it to consider "the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses" -- and only those offenses -- in declining to give a parole date on grounds of public safety.[1]

Although this argument is original, there are several reasons why it lack merit. First, it

---

[1] The first two subsections of section 3041, which are the sections relevant here, read:

(a) In the case of any inmate sentenced pursuant to any provision of law, other than Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2, the Board of Parole Hearings shall meet with each inmate during the third year of incarceration for the purposes of reviewing the inmate's file, making recommendations, and documenting activities and conduct pertinent to granting or withholding postconviction credit. One year prior to the inmate's minimum eligible parole release date a panel of two or more commissioners or deputy commissioners shall again meet with the inmate and shall normally set a parole release date as provided in Section 3041.5. No more than one member of the panel shall be a deputy commissioner. In the event of a tie vote, the matter shall be referred for an en banc hearing by the board. The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates. The board shall establish criteria for the setting of parole release dates and in doing so shall consider the number of victims of the crime for which the inmate was sentenced and other factors in mitigation or aggravation of the crime. At least one commissioner of the panel shall have been present at the last preceding meeting, unless it is not feasible to do so or where the last preceding meeting was the initial meeting. Any person on the hearing panel may request review of any decision regarding parole for an en banc hearing by the board. In case of a review, a majority vote in favor of parole by the board members participating in an en banc hearing is required to grant parole to any inmate.

(b) The panel or the board, sitting en banc, shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

5

is essentially a state-law issue, and state-law violations are not grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Secondly, even if it is assumed that a state law violation such as the one claimed here might give rise to a due process claim, the state courts in this case have held that considering petitioner's prison conduct did not violate state law, and that holding is binding on this court (*see* Exh. D at 2). *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). The predicate for petitioner's claim therefore is absent.

Thirdly, even if the federal court could reexamine the state law determination, the state court's conclusion that state law was not violated was correct. The regulations implementing section 3041(b) say that "circumstances tending to establish unsuitability for parole are that the prisoner . . . (6) has engaged in serious misconduct while in prison." *In re Rosenkrantz*, 29 Cal. 4th at 653-54 (quoting Cal.Code Regs., tit. 15, § 2402(d)) (footnote omitted). In addition, the regulations provide that "circumstances tending to establish suitability for parole are that the prisoner . . . (3) has shown signs of remorse; . . . (7) is of an age that reduces the probability of recidivism; (8) has made realistic plans for release or has developed marketable skills that can be put to use upon release; and (9) has engaged in institutional activities that indicate an enhanced ability to function within the law upon release." *Id.* (quoting Cal.Code Regs., tit. 15, § 2402 (d)). "Finally, the regulation explains that the foregoing circumstances "are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel." *Id.* (quoting (Cal. Code Regs., tit. 15, § 2402 (c), (d)).

After reciting these regulations the California Supreme Court held that "parole applicants in this state have an expectation that they will be granted parole unless the Board finds, in the exercise of its discretion, that they are unsuitable for parole in light of the circumstances specified by statute and *by regulation*." 29 Cal.4th at 654 (emphasis added). That is, the law of California, binding here, is that the Board may consider the regulations in deciding whether to grant a parole date, which necessarily includes the regulations set out above allowing the Board to consider facts subsequent to the commitment offense. It thus did not

1 violate state law for the Board to consider subsequent events, so any contention that petitioner
2 had a due process right arising from state law for the Board to consider only the commitment
3 offense fails.

4 Finally, petitioner might argue that only evidence that goes to his commitment offense
5 can constitute "some evidence" to satisfy due process. When assessing whether a state parole
6 board's suitability determination was supported by "some evidence," the court's analysis is
7 framed by the statutes and regulations governing parole suitability determinations in the
8 relevant state. *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007). Accordingly, in California,
9 the court must look to California law to determine the findings that are necessary to deem a
10 prisoner unsuitable for parole. *Id.* But as discussed above, under California law post-
11 incarceration evidence can be considered in determining whether to grant parole, so any such
12 argument is without merit.

13 Petitioner also contends that the Board's consideration of his rule violation convictions
14 violated his double jeopardy rights. The Double Jeopardy Clause does not preclude criminal
15 prosecution for conduct for which prison authorities have already imposed administrative
16 discipline, *United States v. Brown*, 59 F.3d 102, 103-04 (9th Cir. 1995), because a prison
17 disciplinary proceeding is not a criminal trial, *United States v. Newby*, 11 F.3d 1143, 1145 (3d
18 Cir. 1993). And the Clause's protection against multiple punishment is also rarely implicated
19 because: (1) even if prison disciplinary sanctions are "punishment," they are generally not
20 distinct from the punishment for the conviction for which petitioner is in custody; and (2) the
21 sanctions are not punishment for purposes of double jeopardy because they are also generally
22 solely remedial. *Brown*, 59 F.3d at 104-05. This rationale applies equally well to petitioner's
23 claim that punishment for a rules violation and using the violation as grounds to deny parole
24 violates the Double Jeopardy Clause.

25 In sum, the Board's use of petitioner's rules violations while in prison did not violate his
26 due process or double jeopardy rights.

27 ///
28 ///

7

### b. Presentation of Evidence

At petitioner's request, his counsel objected to the makeup of the Board, saying that he could not receive a fair hearing from a board that had former law enforcement people or victim's rights advocates on it (Exh. C at 10, 12). Also at petitioner's request, counsel attempted to present a list of thirty-three questions petitioner had prepared for the Board members (*id.* at 10-11, 16; Pet. Exh. D). The Board declined to allow this (Exh. C at 10-11, 16).

Petitioner contends that this violated his due process and First Amendment rights, but he relies upon state regulations as the basis for it, so it actually is just a state-law claim, and so cannot be the basis for federal habeas relief. Petitioner cannot turn state-law claims into federal claims by simply providing a conclusory statement that the alleged violation also violated his federal rights. This claim is without merit.

### c. Sufficiency of the Evidence

Petitioner contends that there was not "some evidence" to support the Board's conclusion that his offense was "callous" and "calculated" (Exh. C at 63).

Ascertaining whether the some evidence standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455; *Sass*, 461 F.3d at 1128. The some evidence standard is minimal, and assures that "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).

The Board adopted the statement of facts from the appellate decision (Exh. C at 20). Petitioner got into an argument with friends (Exh. F, attached decision of the court of appeal at 2-3). Knowing that police had been called, petitioner said as soon as the police arrived, "they gonna die" (*id.* at 3). When officer Lothery exited his cruiser petitioner fired a shotgun at him, hitting him with pellets, and fled (*ibid.*). These facts were sufficient to constitute "some evidence" that the offense was callous and calculated.

8

The Board's decision also was supported by much evidence aside from the conviction itself, most notably that he had received seven serious rule violation reports since his prior hearing, a very bad record (Exh. C at 44, 64-65). He also refused to provide information about the education efforts he claimed to be making, so it must be concluded that there were none (*id.* at 34-36); was stated to be a danger to the community by his counselor (*id.* at 45); and claimed to have a place to work if paroled but refused to say what it was (*id.* at 49). There was sufficient evidence to support the outcome, so there was no due process violation.

### d.  Matrix

Petitioner contends that his due process rights were violated by the Board's failure use the "matrix" in the parole regulations to set a specific term for him to serve. This claim is without merit because under state law the matrix does not apply until the Board has found the prisoner suitable for parole. *See In re Dannenberg*, 34 Cal. 4th 1061, 1082-83 (2005). Because the Board has not found petitioner suitable, the failure to apply the matrix did not violate state law, and petitioner has not established the predicate for his claim.

### CONCLUSION

Because petitioner's rights were not violated in the ways he claims, the rejections of his claims by the state courts were not contrary to, nor were they an unreasonable application of, clearly-established Supreme Court authority. The petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: April  11  , 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.06\GAY960.RUL.wpd